**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | |
| ) | |
| Plaintiff,   ) | |
| ) | |
| v.   ) | No.  03-10052-01 |
| ) | No.  05-3434-MLB |
| ITOBORE OSHOBE,   ) | |
| ) | |
| Defendant.   ) | |

**MEMORANDUM AND ORDER**

Before the court are the following:

1. Defendant's motion pursuant to 28 U.S.C. § 2255 (Doc. 126);

2. Defendant's motion for leave to proceed in forma pauperis (Doc. 127);

3. Defendant's motion to disqualify (Doc. 128);

4. Government's response (Doc. 129);

5. Defendant's answer (Doc. 132);

6. Government's response (Doc. 131); and

7. Defendant's answer (Doc. 133).

**Background**

The relevant facts of this case are set forth in the Tenth Circuit's thorough order and judgment affirming defendant's conviction.  <u>United States v. Itobore Oshobe</u>, No. 04-3088, filed August 15, 2005.  The order and judgment was filed in this court on September 9, 2005 (Doc. 125).  Defendant did not seek certiorari.

**Motion to Disqualify**

Citing 28 U.S.C. § 455(a), defendant requests that this § 2255

motion be reassigned to another judge. Defendant states that he has ". . . <u>never</u> claimed that the United States District Court Judge to which he has been assigned, is 'biased' or 'prejudiced' as the government states in its motion.  Rather, the defendant's motion to disqualify is based on personal conflict grounds." (Doc. 132).  The "conflict grounds" are:

    1.  Prior to trial, the court allegedly made "impolite comments about the movant's country of origin" and expressed his belief in defendant's guilt and the strength of the government's case.  It is obvious that defendant has access to the transcript of proceedings in this court, yet he has not cited the portions of the transcript which support this claim.  The court is under no obligation to search the transcript, which approaches 1,000 pages in length, to determine whether the comments were made and, if so, their context.

    2.  Defendant cites comments by the court during defense counsel's cross-examination of a witness which defendant claims destabilized and discouraged his attorney from questioning the witness about several unspecified discrepancies between the witness's testimony and prior statements.  The witness was Mark Vance, a Federal Express courier, who made deliveries to addresses in Pittsburg, Kansas.  Mr. Vance identified both defendants[1] as persons who accepted deliveries at one of the addresses and defendant Oshobe who accepted deliveries at another address.  Mr. Vance thought it unusual that the same person would accept packages

---

[1] The codefendant, Otu Kadana, was acquitted of all charges.

-2-

at different addresses.

During Mr. Vance's questioning by government counsel, a document (Exhibit 207) was projected on a TV screen and Mr. Vance was asked about it. The exhibit bore the name of E. Timon, which was one of the fictitious names used in defendant's fraudulent scheme. Mr. Vance testified that the exhibit identified the shipper as Timon.  The exhibit was then removed from the TV screen.  The court was still reading the exhibit when it was removed and asked that the exhibit be put back up on the screen.  The court then remarked: "The person who shipped the package is Franklin Covey, isn't it?  It says shipper, Franklin Covey." No objection was made to the court's question.  Mr. Vance responded "Oh, yes, sir, you are correct."  Mr. Vance then testified that defendant gave him the name E. Timon as the person who received the package (as opposed to who shipped it).

During her cross-examination of Mr. Vance, defendant's counsel questioned him regarding other individuals who were present when he delivered packages, both male and female.  When the government objected to the relevance of defense counsel's line of questioning, she explained that ". . . we believe there is a misidentification here and we're trying to establish that there were a number of black males going to the addresses and that we think there has been a misidentification and that one of the descriptions he provided does not match a description of Mr. Oshobe at any time when he lived in Pittsburg."  Defense counsel then asked additional questions about an individual with a goatee and an occasion when Mr. Vance had to retape a package.  When government counsel

-3-

objected, the court asked "what does this have to do with it?", referring to the retaping. Defense counsel's response was:

> Your Honor, because it goes to our defense of the Defendant's understanding that he was helping out this friend of Foonta's that was in Nigeria and that had a computer business and he's going to testify that the -- one of the boxes he took out of 1409 where the same thing was happening and where these people also had the understanding that 1409 people were helping out this man, that when he looked in the box that was going out of the apartment to go to Nigeria, it contained various items like cell phones, electronic organizers, laptop computers, that type of thing, which is consistent with what Mr. Oshobe believed he was participating in.

The court then stated:

> That's a wonderful speech. You ignore it, Ladies and Gentlemen. Now, I want you to -- this man came here for essentially one reason and that is to identify your client. I want you to get on with it. We're just casting about here hoping for something to come up. Now let's move on.

(Tr. Transcript, Vol. II, at 457-58). Defense counsel continued to question Mr. Vance.

3. Finally, defendant contends that the court "encouraged a predisposition of guilt by appearing to be supportive of the government" by, for example, telling the jurors that they could take notes, but were not required to do so.

The court's first comment during Mr. Vance's testimony reflected his confusion with an entry on an exhibit. The second comment was made in response to what the court considered to be an irrelevant statement by defense counsel. The instruction regarding note taking is a standard instruction. The court cannot fathom how it could indicate lack of impartiality.

The recusal inquiry based upon 28 U.S.C. § 455(a), lack of impartiality, must be made from the prospective of a reasonable

-4-

observer who is informed of all the surrounding facts and circumstances. <u>Cheney v. United States District Court</u>, 541 U.S. 913, ___ L. Ed. 2d ___, 124 S. Ct. 1391 (2004). Defendant's claim of lack of impartiality does not remotely meet this standard. The trial lasted for a week. Thirty-four witnesses testified. The court made many rulings. One of the defendants was acquitted. It is inconceivable under these circumstances that a reasonable observer would have questioned the court's impartiality <u>during the trial</u> based on the grounds cited by defendant, much less now, when the court is called upon to decide defendant's § 2255 motion.

Accordingly, defendant's motion to disqualify (Doc. 128) is denied.

### **Motion Pursuant to 28 U.S.C. § 2255**

Defendant claims that his trial counsel was ineffective in several respects, each of which will be discussed. A successful claim of ineffective assistance of counsel must meet the two prong test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). First, a defendant must show that his counsel's performance was deficient in that it fell below an objective standard of reasonableness. Second, a defendant must show that counsel's deficient performance actually prejudiced his defense; in other words, that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have different.

A § 2255 motion is not a second opportunity at a direct appeal. In <u>United States v. Blackwell</u>, 127 F.3d 947 (10th Cir. 1997), the court described the limitations of a § 2255 motion:

-5-

> Under § 2255, federal courts have authority to vacate sentences imposed in violation of the Constitution or laws of the United States, in excess of the maximum authorized by law, that the sentencing court was without jurisdiction to impose, or otherwise subject to collateral attack. . . . Grounds for successful collateral attacks are limited far beyond errors justifying reversal on direct appeal; the remedy does not encompass all claimed errors in conviction and sentencing. An error of law or fact does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice. Accordingly, misinformation alone cannot constitute a fundamental defect. Only misinformation of constitutional magnitude is cognizable under § 2255.

Id. at 953-54 (internal quotations and citations omitted).

A defendant's proof must overcome the "strong presumption" that counsel was ineffective. Strategic choices of attorneys are given great deference and the court will not question tactical decisions of trial counsel. Trial strategies necessarily evolve without the benefit of hindsight. A high level of deference is afforded to the reasonableness of counsel's performance in light of all the circumstances at the time. See United States v. Dean, 77 F.3d 329, 334 (10th Cir. 1996) and Williamson v. Ward, 110 F.3d 1508, 1513-14 (10th Cir. 1997).

### Failure to File a Motion to Suppress

Defendant claims that his trial counsel failed to file a motion to suppress evidence seized during a warrant search authorized by a U.S. magistrate judge. The warrant is attached to the motion, but neither the application nor what defendant refers to as "Attachment B" are included. It is not the court's job to obtain these documents or to construct arguments for defendant. Defendant also attempts to support his claim by what he terms as

-6-

a "personal account of execution of search warrant" consisting of fifteen pages of non-evidentiary discussion of what supposedly occurred prior to and during the search and why defendant believes the search was illegal. This "account" is completely irrelevant, of course. Finally, defendant claims that he was told by <u>another</u> attorney that a motion to suppress would have been appropriate. This, too is irrelevant.

Defendant's counsel's decision not to pursue a motion to suppress was a strategic call. Defendant does not appear to recognize that he would have had the difficult burden to challenge the validity of the warrant search, nor does he seem to appreciate that it would be rare indeed for a district judge to invalidate a warrant search authorized by a U.S. magistrate judge. The court finds that defendant has failed to meet his heavy burden to demonstrate that his rights under the Fourth Amendment were violated by the warrant search, a necessary prerequisite to an ineffective assistance of counsel claim. Even if defendant could make such a showing, he also has failed to demonstrate that his counsel's decision to forego a motion to suppress was ineffective assistance. <u>See</u> <u>United States v. Owens</u>, 882 F.2d 1493, 1497–1502 (10th Cir. 1989).

### False Testimony Before the Grand Jury

Defendant contends that a government agent gave false and misleading testimony to the grand jury and that his counsel was ineffective for not moving to dismiss the charges on that basis. Defendant has attached two snippets of the agent's grand jury testimony. In one, he refers to "their confession was they were

-7-

doing it for a gentleman in Nigeria . . ." In the other, the agent testified that "They admit to participating in the scheme, yes, but they advise that they weren't the head guy." Defendant's argument appears to be that while he made a "statement," he did not "confess." This is a frivolous argument, especially since that essentially was defendant's defense. See the Tenth Circuit's Order and Judgment, pp. 19-20.

### Failure to Impeach With Grand Jury Testimony

Defendant contends that his counsel failed to impeach the agent with the supposedly false grand jury testimony. Defendant makes sweeping conclusory assertions that "The jurors could have drawn reasonable inference that Agent Emmot was capable of misleading fact finders such as themselves. They could also have seen that for some undisclosed reason, known only to him, that he had an ill intention towards the defendants in this case." Aside from a total lack of evidentiary support for these assertions, defense counsel's decision whether to use grand jury testimony to cross-examine agent Emmot was another judgment call. Defendant has not demonstrated that counsel's decision meets either of the Strickland requirements.

### Failure to Investigate

Defendant contends that his counsel did not follow up on "peripheral research on the possibility of innocent individuals being used in the furtherance of a fraudulent scheme," research which defendant claims had been conducted by his family members and close friends. Defendant contends that the information could have been used to show that trial testimony of one of the government

-8-

agents was false.

Attached to defendant's motion and "answer" is what purports to be internet documents reporting on an F.B.I. investigation entitled "Operation Cybersweep." Ironically, the documents appear to describe "re-shipping scams" exactly like the one of which defendant was convicted. Aside from the fact that the materials relied upon by defendant were first released during defendant's trial, defendant has not explained how his counsel could have succeeded in getting evidence of Operation Cybersweep before the jury and, more important, how the evidence would have benefitted his case, much less resulted in an acquittal. Quite to the contrary: if the contents of materials describing the scheme outlined in Operation Cybersweep had been presented to the jury, the jurors immediate reaction would have been "that's exactly what defendant was doing."

### The Stipulation and Defendant's Sentence

Defendant contends that his counsel was ineffective because she failed to remove language from a stipulation which ". . . could lead to enhancement during sentencing if movant got convicted."

Defendant and the government entered into a stipulation which read, in its entirety: "The parties stipulate that the known IP addresses of the computers being used to defraud the merchants in this case reveal that said computers were located in Africa and Europe." The court went over the stipulation and advised defendant, in part:

> A stipulation is an agreement, a binding agreement, that you gentlemen are entering into with the United States Attorney that in this case is relieving the United

>           States Attorney of its obligation to prove certain
>           essential elements of the offenses charged.
>
>                                 * * *
>
>           You do not have to agree to this stipulation.
>
>                That's the important thing. Because of the
>           presumption of innocence, because of the Government's
>           obligation that never shifts to you to prove that you
>           committed these crimes, you do not have to stipulate and
>           -- now, if you do stipulate then I'm not going to let you
>           go back on it later. I mean, this is the kind of a
>           decision you have to make now because it's going to
>           effect the evidence that comes in and it's going to
>           effect the instructions that I would give to the jury.
>           But I want you to understand that you do not have to do
>           this. You may wish to do it and that's, that's something
>           that you need to talk about with your lawyers and let
>           them advise you; but in the end, it's your decision, not
>           your lawyers' decision, whether to do this.

(Tr. Transcript, Vol. II, at 343-46).

Defendant, through his counsel indicated ". . . he is willing to go along with that stipulation because it's his understanding that it does not take away the obligation of the Government to prove that he knew that someone was using credit cards illegally." The court then took the noon recess so that defendant could review the stipulation. Following the recess, and in the absence of the jury, the court continued his discussion with defense counsel and defendant regarding the effect of the stipulation. At the end of the discussion, the court addressed defendant directly and he responded "I don't have any questions at this time right now." (Doc. 98, Tr. Transcript, Vol. II, at 341-62).

Defendant's base offense level was increased by two points pursuant to U.S.S.G. § 2B1.1(b)(1)(8)(B) because a substantial part of the fraudulent scheme was committed outside the United States.

Defendant is correct that his counsel did not advise him <u>in</u>

-10-

open court that the stipulation could affect his sentence if he was convicted. Whether counsel did so in conversation with defendant is unknown. The court did not advise defendant, either. There is nothing in the presentence report to indicate that the two point enhancement was based solely on the stipulation. On the contrary, there was an abundance of evidence apart from the stipulation regarding the interstate and foreign commerce aspects of the scheme, none of which was in dispute. Some of the evidence was provided by defendant, who testified that his receipt, repackaging and shipment of goods to Nigeria was strictly innocent. The jury disregarded defendant's totally bogus testimony, and rightly so. The court of appeals was not persuaded, either.

Nevertheless, assuming for purposes of argument that defendant somehow was mislead regarding the effect of the stipulation and he would have refused to enter into the stipulation had he known that it could result in a two point increase to his base offense level and he could show that the stipulation was the sole basis for the enhancement, he still would not be entitled to the relief he is seeking: resentencing. Defendant was sentenced to the top of the (then mandatory) sentencing guideline. If defendant should be resentenced, the court would not be required to follow the (now advisory) guidelines but instead would be limited only by the statutory maximum penalty of ten years imprisonment for defendant's conviction of interstate transportation of stolen goods (18 U.S.C. § 2314). Applying the sentencing factors set forth in 18 U.S.C. § 3553, the court, at the very least, would reimpose the 41 month sentence and would give serious consideration to increasing the

sentence to much closer to the statutory maximum. (The court seriously considered an upward departure at the time of the original sentence, knowing that defendant will be able to avoid an important part of his sentence, restitution, because he will be deported.) Defendant's top-of-the-guideline sentence under the (then mandatory) guideline should be a clear indication to all concerned that the court had no intention of imposing a lesser sentence and would not consider doing so if defendant should be resentenced.

### Failure to Subpoena Witness

Defendant contends that his counsel did not subpoena two witnesses whose counsel had informed her that if called, they would elect their rights under the Fifth Amendment and would refuse to testify. According to defendant, these witnesses would have testified that defendant ". . . <u>only</u> helped to package items at that residence and that [defendant] did <u>not unpack, ship out, sign for, or receive packages</u> at their residences. Also they could have testified that [defendant] was not present at their residence when the packages were unpacked, shipped out, signed for or received at their residence." Defendant contends that his counsel should have told the witnesses' attorney that the witnesses were ". . . not going to testify about their own conduct and that all questioning would be limited to [defendant's] conduct."

At the outset, it is important to observe that defendant has not offered any <u>evidence</u> that the witnesses would have testified in the manner he claims. But beyond this, defendant's assertion that the witnesses could self-limit their own testimony to matters

favorable to defendant is without merit. Defendant's counsel was not ineffective for failing to subpoena witnesses whom she knew, through contact with their attorney, would refuse to testify. <u>United States v. Crawford</u>, 707 F,2d 447, 449 (10th Cir. 1983). (Neither the government nor a defendant may call a witness knowing that the witness will assert the Fifth Amendment.)

Failure to Challenge Photo Spread

Defendant contends that his counsel failed to ". . . present evidence to show unreliability of prejudicial out-of-court photo identification procedure and in-court identification of the movant prior to trial and during trial." Defendant's argument is difficult to follow but he seems to be claiming that a photo spread shown to two witnesses by a government agent was impermissibly suggestive because he was the only person wearing an orange jumpsuit and that his counsel did not utilize the photo spread to impeach the credibility of the witnesses who made in-court identifications of defendant.

Defendant has attached two memoranda of witness interviews prepared by the investigator for the public defender's office. One concerns an interview of Mark Vance, the other of John Steele. Both delivered packages to the addresses in Pittsburg.

The Vance interview report states, in relevant part:

> I also asked Vance if he was certain that he witnessed "Teemon" or Teeteemon" signing for packages at both addresses using different names. He said yes and that he could pick out "Teemon" or Teeteemon's" picture. He said, in fact, he was shown a series of photographs by the Secret Service and he immediately picked him out. He said also that John at UPS also picked out "Teemon" or Teeteemon."

The Steele report states:

> I asked Steele to tell me about the identification process, of the two B/M's, that the Secret Service Agent used. He said that he was asked by Special Agent Emmot to look through several photographs to see if he could find the two individuals he dealt with at 1800 S. Pine St., #2. Steele said he looked at the photos and recognized the taller B/M first. He said he believed this person was photo #5. He said that he then continued to look through the photos for the shorter B.M. Steele said that he saw two photos that he felt were very similar looking to the shorter B/M. Steele said he told Special Agent Emmot, "it's real close." He said Special Agent Emmot told him "pick one." Steele said he told Special Agent Emmot, "if I had to guess, I'll say this one." Steele said he pointed to the photo on the right side of the page instead of the left side. He said Special Agent Emmot stated "that's him."

Based on the record, the court cannot determine whether the photo spread provided by defendant is the one used by the government agent, nor can it be determined from investigator Martinez's reports whether the individual identified by Vance and Steele was, or was not, defendant. The court has reviewed the testimony of Vance (Tr. Vol. II at 44-60) and Steele (Tr. Vol. III at 471-98 and 526-36). Most of their testimony deals with matters other than identification and, to the extent identification was covered, it is unclear how cross-examination using the photo spread would have impacted either witness's testimony, much less how it would have called their testimony into question.

As the Tenth Circuit noted in its Order and Judgment, defendant's defense was that he did not realize that the material he was receiving had been obtained through fraudulent means (Slip Op. at 19). Defendant did not put forth a "mistaken identity" defense and he has not shown how his counsel was ineffective for failing to assert one (assuming that is the contention defendant

-14-

is making).

## Conclusion

The court determines that the files and records conclusively show that defendant is entitled to no relief. Defendant received a fair trial. His counsel did the best she could with what she had to work with, i.e., a clearly-guilty client who sought to avoid conviction by a tall tale which a ten year old child would have seen through. Defendant, represented by retained counsel, took an unsuccessful appeal. His § 2255 motion has no merit. Defendant must finish his sentence and then be deported.

Defendant's motion for leave to proceed in forma pauperis (Doc. 127) is granted. His motion pursuant to 28 U.S.C. § 2255 (Doc. 126) and his motion to disqualify (Doc. 128) are overruled.

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp. The response to any motion for reconsideration shall not

exceed three pages.  No reply shall be filed.

    IT IS SO ORDERED.

    Dated this __6th__ day of March 2006, at Wichita, Kansas.

                                        s/ Monti Belot  
                                        Monti L. Belot  
                                        UNITED STATES DISTRICT JUDGE